**UNITED STATES of America**

v.

**Mutulu SHAKUR, a/k/a "Doc," a/k/a "Jeral Wayne Williams," Sekou Odinga, a/k/a "Nathaniel Burns," a/k/a "Mgabasi," a/k/a "Mugubasi," a/k/a "Eddie Holmes," a/k/a "Lou," Cecil Ferguson, a/k/a "Mo," a/k/a "Chui," Edward Lawrence Joseph, a/k/a "Edward Lawrence," a/k/a "Jamal," a/k/a "Tony," a/k/a "J.R.," William Johnson, a/k/a "Bilal Sunni-Ali," a/k/a "Spirit," Silvia Baraldini, a/k/a "Louise," Susan Rosenberg, a/k/a "Elizabeth," Cheri Dalton, a/k/a "Nahanda," Iliana Robinson, a/k/a "Naomi," Nilse Cobeo, a/k/a "Nilse Lawrence," a/k/a "Ginger," a/k/a "Gigi," a/k/a "Giovanni Correa," and Alan Berkman, Defendants.**

No. SSS 82 Cr. 0312 (KTD).

United States District Court,
S.D. New York.

March 30, 1983.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for the Government; Robert S. Litt, Stacey J. Moritz, Asst. U.S. Attys., New York City, of counsel.

William Mogulescu, New York City, for defendant Edward Joseph.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Edward Joseph moves to suppress all physical evidence seized from the premises located at 85 Barrow Street, Apartment 2L, New York, New York, and 248 West 10th Street, Apartment G27, New York, New York.[1] The evidence was seized pursuant to search warrants authorized respectively on March 26 and March 27, 1982 by Judge Haight.

The defendant attacks the validity of these searches and seizures on five grounds: (i) the warrants were facially overbroad and authorized a general unguided search, (ii) even if the warrants were not facially overbroad, the agents interpreted and executed the warrants as if they authorized a general search, (iii) the warrants contained material misrepresentations, (iv) the evidence seized is the fruit of illegal electronic surveillance, and (v) there was no probable cause to issue the warrants.

(1) The warrant was facially overbroad and/or overbroad as executed by the agents.

Both search warrants authorized the seizure of:

clothing, weapons, bomb paraphernalia, ammunition, car rental agreements relating to cars used in armed robberies of armored trucks, materials, books, records and documents or other papers relating to production, use or deployment of bombs, explosives, incendiary devices or other weapons, or to the whereabouts, plans or meetings of members of terrorist organizations such as the Weather Underground or Black Liberation Army (BLA) and fingerprints of members of or individuals associated with those organizations or with armored car robberies including that occurring on October 20, 1981, and other literature or evidence relating to or evidencing crimes committed by the Weather Underground or BLA which are fruits and instrumentalities of violations of Title 18, United States Code, Section 371, 1962 and 2113.

---

1. Defendant's original motion also objected to a search of 232 West 14th Street, Apartment 1B, New York, New York. The government, however, has stated that it will not introduce at trial any of the evidence it seized at the West 14th Street apartment. Therefore, this part of Joseph's motion is moot.

Co-defendant Ferguson has attacked a warrant authorizing a search and seizure in virtually identical language. He also claimed it was illegal on these two grounds.[2] In my decision examining Ferguson's attack on that search warrant's validity, I analyzed this argument at length and rejected it. Similarly, therefore, for the reasons stated in that decision, Joseph's assertion that the instant warrants were overbroad facially or in execution is not valid.

(2) Material misrepresentations and the fruit of the poisonous tree doctrine.

I also have dealt with both of these issues in a prior opinion denying defendant's motion to suppress electronic surveillance. As I stated in that opinion, there were no material misrepresentations in the papers for the various warrants,[3] see also infra section (3), and the electronic surveillance was conducted legally.

(3) Probable cause.

■ The last issue is whether the search warrants were based on probable cause. The probable cause to search the 85 Barrow Street and West 10th Street apartments was based on affidavits provided by agent Maxwell of the Federal Bureau of Investigation ("FBI"). Maxwell's affidavit included information provided by Samuel Brown. In another opinion, I found Brown's statements to the FBI were voluntary and well corroborated. Brown's statements and the physical surveillance that confirmed Brown's information established sufficient probable cause to warrant a prudent man in believing that Joseph was involved in the events surrounding the October 20th attempted armed robbery. See Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). In addition, the search warrants were supported by FBI Agent Reagan, who had been an undercover member of the Weather Underground, a group that

Joseph had been linked with. Reagan recounted the group's method and use of "safe houses," in which the organization's members would reside on occasion, plan various criminal activities, and store weapons, ammunition, explosives, and other potentially relevant evidence. The investigation up to the date the warrants were issued had in fact resulted in productive searches of several of such "safe houses." The search of a Mount Vernon house rented by Rockland defendant Marilyn Buck, for example, had in fact yielded much relevant evidence.

This pattern of safe house rentals under aliases that has been attributed to organizations allegedly involved in the October 20th incident, closely paralleled the facts surrounding Joseph's apartment rentals. The affidavits established that Joseph was known to have rented at least four apartments. Both electrical service and the apartment rental for 85 Barrow Street were done under the name Edward Lawrence, an apparent alias of Joseph. Tentatively, the landlord and a neighbor had identified Joseph as the tenant. Evidence also established that Joseph resided in other residences within the confines of Manhattan including the West 10th Street apartment. Joseph, in fact, was arrested at approximately 5:55 a.m. at the West 14th Street apartment.

■ Moreover, electronic and physical surveillance also provided evidence supporting probable cause. A communication intercepted at 4:02 p.m. on March 26, 1982, over the 85 Barrow Street wiretap involves Nilse Lawrence, a frequent companion and co-leasee of Joseph. In the conversation, Lawrence states that the FBI is aware of the West 10th Street apartment, and that she removed some of the "stuff" in the apartment. In addition, several persons including Mutulu Shakur also were known to

---

2. Defendants Ferguson and Joseph filed a joint memorandum of law in support of their respective motions to suppress physical evidence.

3. The previous decision did not determine whether the government misrepresented

Yvonne Thomas' reliability. Because her information is not necessary to support my finding of probable cause, I also do not reach that issue herein.

have resided at the 85 Barrow Street location. Finally, electronic surveillance of the 85 Barrow Street apartment revealed discussions of criminal activities. Together, this information provided the probable cause necessary for the search warrants to issue.

In short, defendant's motion to suppress physical evidence seized from the 85 Barrow Street and West 10th Street apartment is denied.

SO ORDERED.